# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THOMAS SEABOLT,**
   **Plaintiff,**

v.                 Case No. 05-C-1240

**QUALA CHAMPAGNE, DR. JOSEPH,
DR. STAFF DENTIST, and SUE NYGREN,**
   **Defendants,**

## DECISION AND ORDER

  On November 30, 2005, plaintiff Thomas Seabolt, who is presently incarcerated at the Racine Correctional Institution ("RCI"), filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. By order of April 13, 2006, I granted plaintiff's motion for leave to proceed in forma pauperis on an Eighth Amendment conditions of confinement claim against Warden Champagne and Eighth Amendment medical indifference claims against Dr. Joseph, Sue Nygren and an unnamed staff dentist.[1] Presently before me are the following motions: (1) plaintiff's motion for summary judgment; (2) plaintiff's "Motion for Immediate Granting of Summary Judgement"; and (3) defendants' motion for summary judgment.[2] All of these motions will be addressed herein.

---

  [1] Plaintiff does not specify whether he is suing the defendants in their individual or official capacity or both. However, the complaint reveals that plaintiff seeks compensatory and punitive damages only and does not allege that the defendants acted pursuant to an official policy or custom. Thus, I will treat his claims as individual capacity claims only. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing 42 U.S.C. § 1983) (stating that officials acting in their official capacities are not "persons" under § 1983 and, thus, not subject to suit for damages.)

  [2] In addition to filing a brief in support of his motion for summary judgment, plaintiff filed a one-page document captioned "Supplement to Plaintiff's Brief in Support of

## I. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over such facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In deciding a motion for summary judgment, I may consider any materials that would be admissible or usable at trial, including properly authenticated and admissible documents. Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000).

I am obliged to draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, I am "not required to draw every conceivable inference from the record — only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

The fact that both parties have moved for summary judgment, and thus both parties simultaneously are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower me to enter judgment as I see fit. See 10A Charles Alan

---

Plaintiff's Motion for Summary Judgment" in which he claims to have "evidence of retaliation by defendant Sue Nygren." (Docket #49.) This document is not relevant to the instant motions for summary judgment because the original complaint did not allege retaliation and, therefore, plaintiff was not permitted to proceed on a retaliation claim.

2

Wright et al., Federal Practice and Procedure § 2720, at 327-28 (3d ed. 1998). I may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. See Mitchell v. McCarty, 239 F.2d 721, 723 (7th Cir. 1957). Cross motions for summary judgment do not convert a dispute into a question of law if material factual questions are involved and additional evidence may be adduced at trial which would be helpful in the disposition of the case. See M. Snower & Co. v. United States, 140 F.2d 367 (7th Cir. 1944). Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. See 10A Wright et al., supra, § 2720, at 335.

## II. PRELIMINARY MATTERS

Along with their motion, defendants filed a supporting brief and "Defendants' Proposed Findings of Fact" (DPFOF), which were "supported by specific citations to evidentiary materials in the record" as required under Civil Local Rule 56.2(a). Their submission identified thirty-nine factual propositions.

Civil Local Rule 56.2(b) provides:

(b) Response. Any materials in opposition to a motion filed under this rule must be filed within 30 days from service of the motion and must include:

(1) A specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists.

(2) A party opposing a motion may present additional factual propositions deemed to be relevant to the motion, in accordance with the

3

procedures set out in Subparagraph (a)(2) of this rule. These propositions may include additional allegedly undisputed material facts and additional material facts which are disputed and which preclude summary judgment.

Plaintiff filed an opposing brief but did not file a response to defendants' proposed findings of fact. The local rules are clear as to the consequences of plaintiff's failure to comply with Civil Local Rule 56.2(b)(1): "the Court <u>must</u> conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." Civil L.R. 56.2(e) (emphasis added). The Court of Appeals for the Seventh Circuit has repeatedly held that district courts are entitled to expect strict compliance with their local rules relating to summary judgment motion practice. See, e.g., <u>Cichon v. Exelon Generation Company, L.L.C.</u>, 401 F.3d 803, 809 (7th Cir. 2005); <u>Ammons v. Aramark Unif. Servs., Inc.</u>, 368 F.3d 809, 817 (7th Cir. 2004); <u>Waldridge v. American Hoechst Corp.</u>, 24 F.3d 918, 922 (7th Cir. 1994). Moreover, plaintiff's failure to comply with Local Rule 56.1(b) is not excused by his pro se status. See <u>Greer v. Bd. of Educ. of Chicago</u>, 267 F.3d 723, 727 (7th Cir. 2001); <u>Stevens v. Navistar Int'l Transp. Corp.</u>, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002).

Therefore, because plaintiff has not responded to defendants' proposed findings of fact, I will accept as such facts as true. Plaintiff also did not file his own proposed findings of fact with his motion for summary judgment as required under Civil Local Rule 56.2(a). As a result, defendants' proposed findings of fact and any relevant and admissible facts contained in plaintiff's verified complaint (which comply with Fed. R. Civ. P. 56(e)) will constitute the undisputed facts for purposes of both plaintiff's and defendants' motions for summary judgment. See <u>Ford v. Wilson</u>, 90 F.3d 245, 246 (7th Cir. 1996).

4

## III. FACTS

Plaintiff is an inmate incarcerated at RCI in Sturtevant, Wisconsin. Defendant Quala Champagne was the Warden of RCI from August 23, 2003, until October 30, 2005. Defendant Joseph worked as a physician at RCI from March 3, 2002, through July 31, 2006. Defendant Nygren is a Nursing Supervisor at RCI and is responsible for the overall administrative support and direction of the Health Services Unit ("HSU") at RCI.

On November 5, 2004, plaintiff had oral surgery. The dentist administered anesthesia and removed all of plaintiff's teeth and fitted him for dentures. Plaintiff asserts that he got back to his cell at around 10:00 a.m., was very tired and went to sleep. He did not awaken until he fell out of the top bunk in his cell at 2:30 a.m on November 6, 2004. During his fall, plaintiff struck a metal desk and sustained injuries requiring medical attention. Plaintiff alleges that he has a lower bunk restriction, which prison officials ignored. He contends that some of the bunks have guard rails while others do not.

Prison officials escorted plaintiff to All Saints Medical Center in Racine, Wisconsin, a local emergency room, and the hospital admitted him at 3:12 a.m. Plaintiff had a laceration on his right cheek bone area and received twenty-one sutures to close the laceration. The emergency room doctors x-rayed plaintiff's wrist, but did not take any head x-rays. Hospital staff discharged plaintiff with instructions to take Tylenol or Ibuprofen, to cleanse the laceration area daily, to remove the sutures in five days, and to apply ice off and on.

In the five days that followed his fall from the bunk, HSU staff evaluated plaintiff on at least four occasions. On November 6, 2004, plaintiff went to HSU to follow up on his

5

ER visit. HSU staff noted that plaintiff did not complain of a headache and did not require pain management beyond Ibuprofen. The following day, on November 7, 2004, plaintiff was seen by HSU staff, again did not complain of having headaches and was given a salt water gargle for the next seven days.

On November 9, 2004, HSU staff saw plaintiff and noted that his wound looked clean and that his sutures would be removed on Thursday or Friday. Staff removed his sutures on November 11, 2004. On November 17 and November 29, 2004, plaintiff received a prescription for 800 mg of Ibuprofen for pain.

On November 30, 2004, HSU staff evaluated plaintiff after he complained of headaches. The plan was for him to take 650 mg of Tylenol as needed and report to the HSU if that was not helpful. Plaintiff visited the HSU again on December 8, 2004, for complaints of continued headaches. The examining physician noted that his sutures were out and the incision had healed. Plaintiff asserted that he did not experience a change in hearing or vision but stated that he was having some balance issues when he moved his head certain ways. Plaintiff told physicians that his headaches were intermittent, not constant, and that the cold seemed to trigger them.

The HSU nurse discussed plaintiff's recent complaints with Dr. Joseph, and he decided to x-ray plaintiff's skull, sinuses and facial bones to assure that plaintiff had not broken any bones during his fall. In the interim, the doctor advised plaintiff to avoid going outside in the cold weather and to contact the HSU if his symptoms worsened or a fever developed. The x-rays showed that no "fractures or focal destructive bony lesions are evident." Dr. Joseph opined that there were no physiological reasons such as broken bones or skull deformities that explained plaintiff's complaints of headaches. Dr. Joseph's

6

prescribed course of treatment was therefore to simply continue prescribing plaintiff a nasal spray for his sinuses and Ibuprofen for pain or headaches. Plaintiff asserts that he still suffers from headaches.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue that they are entitled to summary judgment on four separate grounds: (1) "Dr. Staff Dentist" should be dismissed because it is impossible for counsel to adequately represent an unnamed defendant; (2) the claims against defendants Joseph and Nygren should be dismissed because they were not deliberately indifferent to plaintiff's serious medical needs; (3) the claims against defendant Champagne should be dismissed for lack of personal involvement; and (4) the claims against defendant Champagne should be dismissed because she was not deliberately indifferent to plaintiff's health or safety.

### A.     Claims Against Unnamed "Dr. Staff Dentist"

Defendants argue that I should dismiss "Dr. Staff Dentist" from this action because plaintiff has failed to name this defendant, which makes it impossible for counsel to mount a defense. In response, plaintiff asserts that defendants should have been aware of the identity of "Dr. Staff Dentist" since July 24, 2006, when he filed an "addendum to complaint."

A review of the file in this case reveals that on July 24, 2006, plaintiff filed a motion for the appointment of counsel and included in that motion what he described as an "addendum to the complaint." Therein, he discussed an incident involving Dr. Harenke but did not specifically describe this person as the individual referred to in the complaint as the unnamed "Dr. Staff Dentist." Indeed, the addendum referred to an incident that occurred

7

in June 2006 and did not reference the dental procedure that took place on November 5, 2004, which was the basis of the claim in the complaint. Thus, it was not at all clear from plaintiff's "addendum" that Dr. Harenke was the unnamed "Dr. Staff Dentist."

Nevertheless, it is now obvious that plaintiff does know the identity of the unnamed dentist. That being the case, it would be inappropriate to grant defendants' motion seeking to dismiss this defendant on the ground that he cannot be identified. Counsel for the defendants have entered an appearance on behalf of the unnamed "Dr. Staff Dentist." Plaintiff has now identified him as Dr. Harenke, and defendants' own exhibits show that he was involved in plaintiff's dental treatment in November 2004. (Affidavit of Susan Nygren Ex. 3.) Thus, I will deny the portion of defendants' motion for summary judgment seeking dismissal of "Dr. Staff Dentist." I will further direct the Clerk of Court to amend the case caption to reflect the fact that the defendant previously listed as an unnamed "Dr. Staff Dentist" has been identified by plaintiff as Dr. Harenke.

**B.    Eighth Amendment Claims Against Defendants Joseph and Nygren**

Plaintiff alleges that Dr. Joseph and defendant Nygren were deliberately indifferent to his serious medical needs after he fell from his bunk. Defendants do not dispute that the facial laceration plaintiff received from the fall was a "serious medical need." However, they maintain that the claims against these two defendants should be dismissed because the undisputed facts show that they were not deliberately indifferent to plaintiff's needs.

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the defendant-official acted with deliberate indifference to his health or safety. Farmer v. Brennan, 511 U.S. 825, 834

8

(1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Zentmyer v. Kendall County, Illinois, 220 F.3d 805, 810 (7th Cir. 2000). To defeat defendants' motion for summary judgment, plaintiff must cite evidence from which it can be inferred that he had a serious health need and that prison officials were deliberately indifferent to this need. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997).

Because the parties do not dispute the fact that plaintiff's facial laceration was a serious medical need, the question turns on whether defendants were deliberately indifferent to that need. A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." Tesch v. County of Green Lake, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. See Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." Chapman, 241 F.3d at 845 (citing Farmer, 511 U.S. at 840-42).

The uncontested facts show that plaintiff's facial laceration was promptly sutured, and that he was seen regularly in the HSU following his fall. Plaintiff denied suffering constant headaches and denied a need for paid medication beyond Ibuprofen. After his sutures were removed, he received two separate prescriptions for Ibuprofen for pain as requested. When his prescription for Ibuprofen ran out, he received Tylenol. Plaintiff's headache complaints continued, thus, approximately a month after his fall, Dr. Joseph took

9

an x-ray of his skull, facial bones and sinuses. Dr. Joseph determined that because the x-ray showed no fractures or lesions, there was no physiological reason explaining plaintiff's headaches. As a result, Dr. Joseph prescribed a nasal spray for plaintiff's sinuses and Ibuprofen for pain or headaches.

Plaintiff argues that the treatment he received was inadequate because he was left without effective pain medications for twelve days and further tests, such as a CT scan, should have been performed on him after the x-ray.[3] In determining whether an official's conduct amounts to deliberate indifference, a court may not look at the alleged acts of denial in isolation; rather, it "must examine the totality of an inmate's medical care." Gutierrez, 111 F.3d at 1375. In Gutierrez, the court found that isolated incidents of delay, during ten months of prompt, extensive treatment did not amount to deliberate indifference. Id. Similarly, in Dunigan v. Winnebago County, 165 F.3d 587, 591 (7th Cir. 1999), "factual highlights" of neglect over a month and a half of otherwise unobjectionable treatment were found insufficient to avoid summary judgment. Moreover, an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996).

---

[3] To support his claim that he was not given the desired pain medication for twelve days, plaintiff cites to "Exhibit A" but does not specify where, in the record, Exhibit A can be found. No such exhibit was attached to his motion for summary judgment or his opposition to defendants' motion for summary judgment. The court did discover an exhibit "A" attached to plaintiff's motion to strike affirmative defenses that was filed on June 28, 2006. (Docket #16.) Presumably, this is the exhibit to which plaintiff is referring. However, the exhibit is not admissible for purposes of deciding defendants' summary judgment motion, as it consists entirely of plaintiff's unsworn description of his requests for medication along with various unauthenticated medication request forms.

10

Looking at the totality of the care he received, the record demonstrates that plaintiff received prompt and consistent treatment for his medical needs related to his facial laceration and headaches. In addition, plaintiff has presented no medical evidence that the alleged twelve-day delay in receiving Ibuprofen (as opposed to Tylenol) had any detrimental effect on his medical condition. Further, his contention that he should have received a CT scan after the x-rays came back negative amounts to nothing more than a disagreement with Dr. Joseph's prescribed course of treatment. "Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261 (7th Cir.1996). Here, plaintiff has pointed to no evidence suggesting that not ordering a CT scan after the x-ray came back negative was a "substantial departure from accepted professional judgment, practice, or standards." Id. at 262.

Thus, plaintiff cannot establish an Eighth Amendment claim against defendants Joseph and Nygren. Therefore, defendants' motion for summary judgment on the claims against them will be granted.

**C.    Eighth Amendment Claim Against Defendant Champagne**

Plaintiff was allowed to proceed on an Eighth Amendment conditions of confinement claim against defendant Champagne, which alleged that his bunk was unsafe because it lacked a guard rail. Plaintiff alleges that he was placed in the top bunk after he received anesthesia even though he had a lower bunk restriction, and that defendant Champagne is responsible for these unsafe conditions.

Prison administrators are liable under § 1983 for failing to protect their charges

11

against violence or injury only if they knew of and disregarded an excessive risk to inmate safety. See Farmer, 511 U.S. at 837; Pierson v. Hartley, 391 F.3d 898, 901 (7th Cir. 2004). There is no respondeat superior liability under § 1983; thus, a plaintiff must demonstrate that supervisory officials are personally responsible for alleged deprivations of rights. See Monell v. Dep't of Social Serv's, 436 U.S. 658, 694 (1978); Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir.2001); Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir. 1996). Section 1983 does not create collective or vicarious responsibility. Sanville, 266 F.3d at 740. "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir.2001) (citations omitted). Supervisory officials may be personally responsible for the constitutional torts of their subordinates only if the official knows of and facilitates, approves, condones, or turns a blind eye to the conduct. See Chavez v. Cady, 207 F.3d 901, 906 (7th Cir. 2000); Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).

It is undisputed that defendant Champagne did not personally place plaintiff in the top bunk. Further, there is nothing in the record suggesting that defendant Champagne knew that plaintiff had a lower bunk restriction, that he had received anesthesia, or that he was placed in the top bunk after his dental procedure. Although plaintiff argues that as warden, defendant Champagne was responsible for all of the unsafe conditions at the institution, defendant Champagne's uncontested affidavit states that she had no personal involvement and did not personally participate in the decisions regarding how RCI's cells or bunks were set up or designed.

Plaintiff argues in his brief that the danger was obvious because he was not the first person to fall out of a bunk. However, he points to no evidence in the record to

12

substantiate his assertion that others had fallen, which would have put defendant Champagne on notice of the potential risks. Thus, because plaintiff has failed to point to any evidence establishing that defendant Champagne was personally involved in, or even aware of, the events leading up to his injury, she is entitled to summary judgment on the Eighth Amendment claim against her.

## V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Having determined that defendants Joseph, Nygren and Champagne are entitled to summary judgment on the claims against them, plaintiff's motion for summary judgment must accordingly be denied with respect those claims. There remains, however, plaintiff's Eighth Amendment claim against the unnamed "Dr. Staff Dentist" who has now been identified as Dr. Harenke.

As a preliminary matter, I note that, on December 7, 2006, plaintiff filed a motion for "Immediate Granting of Summary Judgment" on the ground that defendants had failed to timely respond to his motion for summary judgment. Specifically, plaintiff argued that defendants had not filed a response to his motion by the December 4, 2006, deadline. A review of the record in this case reveals that defendants did file their response on December 4, 2006. Therefore, plaintiff's motion for immediate granting of summary judgment (Docket #44) will be denied.

Plaintiff alleges that Dr. Harenke was deliberately indifferent to his medical needs under the Eighth Amendment when he gave him too much anesthetic and then sent him back to his cell without observation, even though he had a history of allergies to some medication. A deliberate indifference claim requires both an objectively serious risk of

13

harm and a subjectively culpable state of mind. Farmer, 511 U.S. at 834.

While plaintiff argues that he is entitled to relief as a matter of law on this claim in his motion for summary judgment, he fails to address this claim in his brief other than to state that the complaint "clearly show[s] neglegence [sic] on the part of the . . . dentist." However, as previously stated, neither negligence nor even gross negligence is a sufficient basis for liability under § 1983. See Salazar, 940 F.2d at 238; see also Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007) ("Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference."). In order to establish liability under § 1983, plaintiff must demonstrate that Dr. Harenke was deliberately indifferent to his medical needs, which requires evidence that he "was aware of the risk and consciously disregarded it nonetheless." Chapman, 241 F.3d at 845 (citing Farmer, 511 U.S. at 840-42).

The verified complaint states only that plaintiff "believe[d] that [Dr. Harenke] used too much antistetic" [sic] and that plaintiff "contend[s] . . . that [Dr. Harenke] knew that [plaintiff] had a history of allergies to some medication but still pumped [him] full of antistetic [sic] . . . without knowing what kind of reaction [plaintiff] might have." (Compl. at 7 and 11.) These unsubstantiated assertions fall far short of the proof required in order to prevail on a motion for summary judgment. See Kaba v. Stepp, 458 F.3d 678, 681 (7th Cir. 2006) (stating that affidavits may be considered competent evidence on summary judgment motion only if they are based on "personal knowledge").

Because plaintiff has failed to offer sufficient evidence to establish that Dr. Harenke was deliberately indifferent to his medical needs, he is not entitled to summary judgment

14

on his Eighth Amendment claim against this defendant.[4]

## VI. CONCLUSION

**THEREFORE, IT IS ORDERED** that the Clerk of Court amend the case caption to substitute Dr. Harenke for the defendant currently listed as an unnamed "Dr. Staff Dentist."

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is **denied** with respect to the claim against Dr. Harenke.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is **granted** with respect to the claims against the remaining defendants.

**IT IS FURTHER ORDERED** that plaintiff's "Motion for Immediate Granting of Summary Judgment" (Docket #44) is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Docket #33) is **denied**.

Dated at Milwaukee, Wisconsin, this 31 day of July, 2007.

/s_____
LYNN ADELMAN
District Judge

---

[4] It would also be inappropriate to award summary judgment given Dr. Harenke's recent identification as the unnamed staff dentist.

15